## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Peter F.,

                   Plaintiff,

v.

Leland Dudek, Acting Commissioner of the
Social Security Administration,[1]

                   Defendant.

Civil No. 3:24-cv-01275 (TOF)

March 11, 2025

## RULING ON PENDING MOTIONS

## I.     INTRODUCTION

The plaintiff, Peter F.,[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner"), rejecting his application for disability insurance benefits under Title II of the Social Security Act. (Am. Compl., ECF No. 11.) He has moved the Court for an order reversing and remanding the decision of the Commissioner "for further administrative proceedings." (ECF No. 15.) The Commissioner has moved the Court for an order affirming the decision. (ECF No. 19.)

The plaintiff raises two principal issues on appeal. First, he claims that the residual functional capacity ("RFC") determined by the Administrative Law Judge ("ALJ"), Eskunder

---

[1]     When the plaintiff filed this action, he named the then-Commissioner of the Social Security Administration, Martin O'Malley, as the defendant. (Compl., ECF No. 1; *see also* Am. Compl., ECF No. 11.) Commissioner O'Malley no longer serves in that office. His successor, Acting Commissioner Leland Dudek, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2]     Pursuant to the Court's January 8, 2021 Standing Order, the plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

Boyd, is not supported by substantial evidence because it failed to account for his moderate limitations in concentration, persistence, and pace ("CPP"). (Pl.'s Memo. of L., ECF No. 16 ("Pl.'s Memo."), at 8–10.) Second, the plaintiff contends that the ALJ erred in excluding the medical opinion of Sharon Benson, RNP CSR-APRN, on the ground that its submission violated the so-called "five-day rule." (*Id.* at 10–12.) In response, the Commissioner contends that the ALJ's findings are "supported by substantial evidence and made by a correct application of legal principles." (Def.'s Memo. of L., ECF No. 19-1 ("Def.'s Memo."), at 1.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 955-page administrative record, the Court agrees with the Commissioner. For the reasons set forth below, the plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 15) will be DENIED, the Commissioner's Motion to Affirm the Decision of the Commissioner (ECF No. 19) will be GRANTED, and the Court will direct the Clerk to enter judgment in favor of the Commissioner.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2022, the plaintiff applied for disability insurance benefits under Title II of the Social Security Act. (R. 65.) He originally claimed that he could not work due to generalized anxiety disorder, major depressive disorder, ulcers, hypertension, sleep issues, kidney issues, and other mental health issues. (*Id.*) Ultimately, he would receive specific diagnoses of thoracic compression fracture, acute ischemic stroke, depressive disorder, anxiety disorder, Tourette's disorder, gastrointestinal disorders, gout, asthma, hypertension, left renal mass, vertigo disorder, obesity, hyperlipidemia, vitamin D deficiency, fractured calcaneus, and thrombocytopenia. (R. 360–61, 412, 471, 593, 603, 770, 833.) He alleged that he had been disabled since May 30, 2019. (R. 65.) His date last insured was December 31, 2022. (*Id.*)

2

The Social Security Administration ("SSA") denied the plaintiff's claim at the initial level on September 16, 2022.  (R. 94–97.)  The plaintiff requested reconsideration (R. 103), and the SSA denied his claim yet again on January 25, 2023.  (R. 105–07.)  He then requested a hearing before an ALJ (R. 112), and the SSA scheduled his hearing for June 22, 2023.  (R. 165.)  Following a postponement at the plaintiff's request (R. 192), the ALJ held a hearing on September 11, 2023. (R. 195.)

At the hearing, the ALJ first heard testimony from the plaintiff.  (R. 40–56.)  Both the ALJ (R. 40–54) and the plaintiff's then-counsel, Attorney Julie Kantor (R. 54–56), questioned him. Relevant here, the plaintiff testified that "concentrating is always kind of a battle" and that he now has "problems" with "deadlines and getting things done on time."  (R. 46, 56.)  He also testified that these issues may be affected by what he is "interested in," as he has no problem reading the box score of a baseball game or watching a movie and keeping track of the story.  (R. 46–47.)

The ALJ also heard testimony from Brian Daly, a vocational expert ("VE").  (R. 57–62.) In presenting hypotheticals, the ALJ asked the VE to assume an individual of the plaintiff's age, education, and vocational background who is limited to light work and is further limited by, among other things, the ability to "sustain concentration, pace and persistence for two-hour segments." (R. 58.)  The VE determined that the hypothetical individual would not be able to perform the plaintiff's past work (R. 59) but could perform some jobs in the national economy.  (R. 59–60.) When the ALJ changed the hypothetical to include a limit in CPP that would have the person be off task at least 15% of the workday, the VE determined that such a limitation would preclude the individual from working.  (R. 61.)  The plaintiff's counsel also questioned the VE.  (R. 61–62.)

Before adjourning the hearing, the ALJ canvased the plaintiff's counsel about the completeness of the record.  (R. 62.)  Counsel confirmed that she intended to submit medical

records from Cardiac Specialists, Danbury Hospital, and Stokes Counseling Services.  (R. 62–63.)
The plaintiff stated that he had "all the records," and counsel confirmed that she would submit
them within two weeks.  (R. 63.)  The ALJ agreed to keep the record open for two weeks so that
counsel could submit the additional materials.  (*Id.*)  Counsel did not mention anything about
seeking other records or opinions.

Following the hearing, the plaintiff submitted the records discussed during the hearing.  (R.
14, 339.)  The plaintiff also submitted, among other things, an opinion from APRN Benson, who
conducted a medical records review.  (R. 15, 345–53.)  APRN Benson rendered the opinion on
October 29, 2023, and the plaintiff submitted it to the ALJ on November 1, 2023, fifty-one days
after the hearing.  (R. 345; Pl.'s Memo. at 11; Def.'s Memo. at 8–9.)  The plaintiff did not include
the opinion on the list of outstanding records submitted to the ALJ on August 30, 2023, nor did
counsel mention it during the hearing.  (R. 338–39; 62–63.)

After considering the evidence that he had admitted into the record, the ALJ found the
plaintiff to be "not disabled under sections 216(i) and 223(d) of the Social Security Act" in a
sixteen-page opinion dated December 14, 2023.  (R. 29.)  At the beginning of the opinion, the ALJ
noted that, because the plaintiff submitted or informed him about additional written evidence from
Stokes Counseling Services, Danbury Hospital, Cardiac Specialists, and Village Square Internal
Medicine within the time frame of more than five business days before the scheduled hearing date,
he kept the record open for receipt of those records and admitted them into evidence.  (R. 14.)  The
ALJ did not, however, admit the medical record review completed by APRN Benson because the
plaintiff submitted it "late without any explanation."  (R. 15.)  Specifically, the ALJ determined
that the plaintiff submitted or informed him of the medical opinion outside of the time frame of
more than five days before the scheduled hearing, and that the plaintiff provided no evidence to

4

demonstrate that the late submission fell within one of the exceptions to the rule. *See* 20 C.F.R. § 404.935. (*Id.*) The ALJ then followed the required five-step sequential evaluation process, which will be explained further below, in deciding whether the plaintiff was disabled. (R. 16–28.)

At Step One, the ALJ concluded that the plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of May 30, 2019 through his date last insured of December 31, 2022." (R. 17.) At Step Two, he held that, through the date last insured, the plaintiff "had the following severe impairments: Thoracic Compression Fracture, Status Post Ischemic Stroke, Depressive Disorder, Anxiety Disorder, and Tourette's Disorder." (*Id.*) The ALJ also considered the plaintiff's gastrointestinal disorders, gout, asthma, hypertension, left renal mass, vertigo disorder, obesity, hyperlipidemia, vitamin D deficiency, fractured calcaneus, and thrombocytopenia, but he determined that these impairments were non-severe. (*Id.*)

At Step Three, the ALJ concluded that the plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings"—that is, the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.) In coming to that conclusion, the ALJ considered whether the plaintiff's impairments met or medically equaled the severity of five Listings. (R. 18–19.) With respect to physical impairments, the ALJ considered and rejected Listing 1.15, which concerns "[d]isorders of the skeletal spine resulting in compromise of a nerve root," and Listing 11.04, which concerns "[v]ascular insult to the brain." 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.) With respect to mental impairments, the ALJ considered and rejected Listing 12.04, which concerns "[d]epressive, bipolar and related disorders"; Listing 12.06, which concerns "[a]nxiety and obsessive-compulsive disorders"; and Listing 12.11, which concerns "[n]eurodevelopmental disorders." *Id.* (*Id.*) He further considered

whether the "Paragraph B" and "Paragraph C" criteria had been satisfied, and he concluded that they had not.  (R. 18–19.)

The ALJ then determined that, through the date last insured, the plaintiff retained the RFC to "perform light work as defined in 20 CFR 404.1567(b), except he could not climb ladders, ropes, or scaffolds."  (R. 19.)  He also "could never kneel or crawl."  (*Id.*)  He could (1) "occasionally climb ramps or stairs, balance, stoop, and crouch"; (2) "frequently handle and finger"; (3) "perform simple, routine, and repetitive tasks"; (4) "sustain concentration, persistence, and pace for two-hour segments"; (5) "have occasional interaction with supervisors"; (6) "have occasional, non-collaborative interaction with co-workers"; (7) "have brief and superficial (no more than 10 percent of the workday) interact[ion] with the public"; and (8) "do work with little or no changes in duties or routines . . . [but] no work requiring independent judgment."  (*Id.*)

At Step Four, the ALJ found that, through the date last insured, "the claimant was unable to perform any past relevant work."  (R. 26.)  He therefore proceeded to Step Five and relied on the testimony of the VE to find that, through the date last insured, "there were jobs that that existed in significant numbers in the national economy that the [plaintiff] could have performed," including routing clerk, marker, and power screwdriver operator.  (R. 27–28.)  Accordingly, the ALJ determined that the plaintiff was not disabled from the alleged onset date of May 30, 2019, through December 31, 2022, the date last insured.  (R. 28.)  On June 25, 2024, the Appeals Council denied the plaintiff's request for review.  (R. 1.)

The plaintiff then filed this action.  (Compl., ECF No. 1; *see also* Am. Compl., ECF No. 11.)  The Commissioner appeared and denied the allegations of the complaint by filing the 955-page Certified Administrative Record.  (ECF No. 13.)  The plaintiff then filed his motion to reverse the decision of the Commissioner (ECF No. 15), and the Commissioner moved for an order

affirming the decision below.  (ECF No. 19.)  The plaintiff filed a reply brief in support of his motion on January 16, 2025.  (ECF No. 20.)  With neither party having requested oral argument, the motions are ripe for decision.  *See* Suppl. R. for Soc. Sec. 5 ("The action is presented for decision by the parties' briefs.").

## III.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the Listings. *Id.*  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of his "past relevant work." *Id.*  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.*  The claimant bears the burden of proving his case at Steps One through Four. *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citations omitted). Although the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner.").

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."

*Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## IV.   DISCUSSION

As noted in the introduction, the plaintiff asserts two principal claims of error in this appeal. First, he claims that the ALJ failed to account for his moderate limitations in CPP in determining the RFC.  (Pl.'s Memo. at 8–10.)  Second, he contends that the ALJ erred in excluding the medical opinion of APRN Sharon Benson on the ground that its submission violated the five-day rule.  (*Id.* at 10–12.)  Because the second claim implicates the completeness of the record, and because the ALJ's compliance with his duty to develop the record is a threshold issue, *Camarota v. Comm'r of Soc. Sec.*, No. 3:19-cv-00133 (RMS), 2020 WL 132437, at *5 (D. Conn. Jan. 13, 2020), the Court will address it first even though it appears second in the plaintiff's brief.

### A.    The ALJ's Decision to Exclude the Medical Opinion of APRN Benson Complied with the SSA's Five-Day Rule

The Commissioner's regulations require a claimant to submit or inform the ALJ of written evidence no later than five business days before the benefits hearing.  20 C.F.R. § 404.935(a); *see DeGraff v. Comm'r of Soc. Sec.*, 850 F. App'x 130, 131 (2d Cir. 2021) (summary order).  If a claimant fails to comply with the rule, the ALJ "may decline to consider or obtain" the evidence unless certain circumstances are present.  20 C.F.R. § 404.935(a).  The regulations identify three exceptions to the five-day rule: (1) an agency action "misled" the claimant; (2) a "physical, mental, educational, or linguistic limitation" prevented the claimant from disclosing or submitting evidence; or (3) some other "unusual, unexpected or unavoidable circumstance" beyond the claimant's control prevented disclosure or submission of the evidence.  20 C.F.R. § 404.935(b). In adopting the five-day rule, the Commissioner specifically sought to "appropriately balance the twin concerns of fairness and efficiency. . . ." *Ensuring Program Uniformity at the Hearing and*

*Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016).  The SSA contemplated that the rule would "ensure claimants have the benefit of a fully developed record" at the time of their hearings.  *Id.*

The five-day rule, however, does not eliminate an ALJ's duty to develop the record. *Shackleford v. Saul*, No. 3:19-cv-01278 (TOF), 2020 WL 3888037, at *6 (D. Conn. July 10, 2020); *see also DeGraff*, 850 F. App'x at 131; *Whittaker v. Comm'r of Soc. Sec.*, No. 2:18-cv-02697 (AMD), 2020 WL 2933863, at *3 (E.D.N.Y. Jun. 2, 2020).  The duty to develop the record may be implicated when an ALJ is aware of additional records, even if those records have not been submitted.  *Whitaker*, 2020 WL 2933863, at *3; *Ocasio v. Comm'r of Soc. Sec.*, No. 1:18-cv-02472 (KAM), 2020 WL 1989281, at *5 (E.D.N.Y. Apr. 25, 2020) ("[T]he ALJ was aware or should already have been aware that the medical records were outstanding, and therefore should have requested the records.")

In this case, the plaintiff did not meet the requirements of the five-day rule with respect to APRN Benson's opinion; he neither informed the ALJ of the opinion's existence nor did he submit it at least five days before the hearing.  (R. 15.)  The plaintiff has also not demonstrated that the untimely submission of APRN Benson's opinion falls under one of the exceptions to the five-day rule.  (*See generally* Pl.'s Memo.; ECF No. 20.)  Indeed, he makes no argument that he failed to timely submit or disclose APRN Benson's opinion because he was misled by the SSA; because a physical, mental, educational, or linguistic limitation prevented him; or because some other circumstance beyond his control prevented him.  *See* 20 C.F.R. § 404.935(b).

Instead, the plaintiff argues that the submission of APRN Benson's opinion did not violate the five-day rule because that medical document "did not exist prior to the date of the hearing." (Pl.'s Memo. at 11.)    Relying on *Corporan v. Comm'r of Soc. Sec.*, he contends that the ALJ

should have entered the opinion into evidence because post-hearing evidence is both "encourage[d]" and "routinely consider[ed]." No. 1:12-cv-06704 (JPO) (SN), 2015 WL 321832, at *27 (S.D.N.Y. Jan 23, 2015) (citing *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010)). (*Id.*) He further contends, relying on *Zabala v. Astrue*, that the ALJ's failure to consider APRN Benson's opinion warrants remand. 595 F.3d 402 (2d Cir. 2010). (ECF No. 20, at 3–4.) Reliance on these cases, however, is misplaced.

In *Corporan¸* the court concluded that the ALJ had an enhanced duty to develop the record because the claimant alleged a mental impairment and was not represented by counsel during the hearing. 2015 WL 321832, at *2. As a part of that enhanced duty, the court concluded that the ALJ should have attempted "to obtain evidence he learned about during the hearing." *Id.* at *27. Here, unlike in *Corporan*, the plaintiff was represented by counsel at his hearing. Additionally, in this case the ALJ left the record open to obtain the evidence that was discussed during the hearing. APRN Benson's medical opinion was not part of the evidence discussed during the hearing, and the plaintiff did not make the ALJ aware that he intended to request it. Thus, *Corporan* does not support the plaintiff's claims.

In *Zabala*, the court concluded that the improper exclusion of evidence is ordinarily grounds for remand, "at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." 595 F.3d at 409. In that case, the ALJ failed to consider the report of a treating physician after incorrectly determining that the report was incomplete and unsigned. *Id.* The court concluded that the failure to give the treating physician's opinion controlling weight or to provide good reasons for discounting it violated the then-existing treating physician rule. *Id.* The court nevertheless declined to remand the case for consideration of the report. *Id.* at 410.

In this case, APRN Benson was not a treating physician. She performed a records review more than a month after the plaintiff's benefits hearing. Moreover, *Zabala* does not stand for the proposition that failing to consider an untimely submitted report ordinarily requires remand. The ALJ in *Zabala* declined to consider the treating physician's report because he thought it was incomplete and unsigned, not because it was untimely submitted. Accordingly, *Zabala* is distinguishable from the present case.

The Court acknowledges that ALJs do admit and consider post-hearing evidence with some frequency. But that does not mean that the ALJ here committed reversible error in declining to admit and consider APRN Benson's opinion. This is not a situation where a treating source opinion was submitted just before a hearing and was still excluded by the ALJ. *See Rivera v. Saul*, No. 3:19-cv-00109 (WIG), 2019 WL 4855232, at *5 (D. Conn. Oct. 2, 2019) (finding the record was insufficiently developed where the ALJ excluded records that were submitted two days before the hearing). It is also not a situation where an ALJ was aware of medical records that were not yet submitted and declined to request or consider them. *See, e.g.*, *Ocasio*, 2020 WL 1989281, at *5 ("[T]he ALJ was aware or should already have been aware that the medical records were outstanding, and therefore should have requested the records."); *Candelaria o/b/o J.L.G.L. v. Saul*, No. 1:18-cv-00557 (LJV), 2019 WL 4140937, at *6 (W.D.N.Y. Aug. 30, 2019) (concluding that the ALJ erred in refusing to consider evidence "that the attorney had requested but not yet received by the hearing date" in light of the fact that "evidence in the record indicated that there was other evidence that might be relevant to the ALJ's conclusion").

The plaintiff in this case submitted APRN Benson's opinion fifty-one days after the hearing without previously informing the ALJ of its existence and with no good cause for the late submission. *See, e.g.*, *Arias v. Saul*, No. 1:18-cv-01296 (KAM), 2020 WL 1989277, at *7

(E.D.N.Y. Apr. 25, 2020) (concluding that records were properly excluded on five-day rule grounds where neither the plaintiff nor her representative took steps to notify the ALJ of the outstanding records). "To say that the ALJ was required to admit and consider this evidence despite the fact that it was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with." *Arthur L. v. Berryhill*, No. 5:18-cv-00304 (FJS) (DJS), 2019 WL 4395421, at *4 (N.D.N.Y. June 6, 2019).

Moreover, the implications of the plaintiff's position in this case could lead to untenable outcomes. The Court acknowledges that the Social Security Act is a remedial statute, and that the hearing is a non-adversarial proceeding. But the "ALJ is not required to hold open the record for an infinite amount of time[.]" *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 369 (W.D.N.Y. 2021). Indeed, "[i]t would completely erode the purpose of the five-day rule to require an ALJ to accept late records without regard to whether a claimant diligently attempted to submit the records in a timely manner." *Ashley S. v. Comm'r of Soc. Sec.*, No. 1:19-cv-01033 (HKS), 2021 WL 763725, at *4 (W.D.N.Y. Feb. 26, 2021). This is particularly true with respect to medical source statements, which are "so common in these types of proceedings." *Arthur L.*, 2019 WL 4395421, at *3. To accept that a post-hearing medical records review is not subject to the five-day rule would "permit litigants to render the five-day rule entirely superfluous." *Id.* Accepting such a contention could also make the benefits hearing almost meaningless. A plaintiff's attorney could, for example, use the hearing to find out the points at which the ALJ is resisting his client's claim, and then fill in any holes in the case with late-filed opinions from paid, non-examining sources.

For these reasons, the Court concludes that the ALJ did not err in declining to consider the opinion of APRN Benson on the ground that it was untimely submitted.

**B.     The Plaintiff Does Not Meet His Burden to Prove a More Restrictive RFC**

The plaintiff argues that the RFC does not sufficiently account for his moderate limitations in CPP.  (Pl.'s Memo. at 8.)  On this issue, "the plaintiff has the burden to prove a more restrictive RFC than the ALJ found."  *Gibson v. Saul*, No. 3:20-cv-00145 (KAD), 2021 WL 371577, at *11 (D. Conn. Feb. 3, 2021) (quoting *Salerno v. Berryhill*, No. 1:19-cv-00627 (KHP), 2020 WL 882006, at *10 (S.D.N.Y. Feb. 24, 2020)).  In this case, he has not done so.

The plaintiff first lists examples from the SSA's POMS manual of manifestations of limitations in CPP.  (Pl.'s Memo. at 9.)  These manifestations include "initiating and performing a task that you understand and know how to do, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring [or] avoiding distractions while working, changing activities or work settings without being disruptive, working close to or with others without interrupting or distracting them, sustaining an ordinary routine and regular attendance at work, and working a full day without needing more than the allotted number or length of rest periods during the day."  POMS DI 34001.032.  He then argues that "[t]he RFC does not account for any of these limitations."  (*Id.*)  The plaintiff's argument, however, is conclusory and does not rely on any evidence in the record.  (*See id.* at 8–10.)  In substance, he argues that an ALJ must consider certain deficits in CPP when assessing a claimant's RFC, but he does not show that he had those deficits.  Indeed, he does not point to any medical opinions or hearing testimony suggesting a limitation that the ALJ failed to consider.  Accordingly, the plaintiff's argument is unavailing.

The plaintiff next contends that the ALJ should have explicitly incorporated the moderate limitation in CPP into the hypothetical questions posed to the VE.  (*Id.* at 9.)  As courts have recognized, "an ALJ does not [necessarily] account 'for a claimant's limitations in concentration, persistence, and pace by restricting [a] hypothetical question [posed to a vocational expert] to

14

simple, routine tasks or unskilled work.'" *Freund v. Berryhill*, No. 1:17-cv-09967 (JPO), 2019 WL 1323992, at *11 (S.D.N.Y. Mar. 25, 2019) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (internal quotation marks omitted)).  Although a limitation to simple and routine tasks does not *necessarily* address genuine deficits in CPP, the plaintiff has not met his burden to show the Court that the ALJ's limitation is insufficient in his case.  As the Commissioner points out in his brief, there are several cases in the Second Circuit holding that a limitation to simple and routine tasks will generally be deemed consistent with moderate deficits in CPP.  *See, e.g.*, *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013); *Zabala*, 595 F.3d at 410.  (Def.'s Memo. at 6–7.)

Moreover, the hearing transcript confirms that the ALJ did incorporate into his hypothetical questions his finding that the plaintiff could sustain CPP for two-hour segments.  In the first hypothetical question to the VE, the ALJ included that the plaintiff could "sustain concentration, pace and persistence for two-hour segments."  (R. 58.)  In the second hypothetical question, the ALJ stated that "all of the limitations" from the first hypothetical "remain in place."  (R. 60.) "Consequently, the ALJ complied with the procedural principle . . . that 'an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace.'"  *Andrew M. v. Kijakazi*, No. 3:24-cv-01099 (SDV), 2024 WL 4116559, at *5 (D. Conn. Sept. 9, 2024) (quoting *McIntyre*, 758 F.3d at 152).

Finally, the plaintiff briefly argues that the ALJ's finding of a limitation of maintaining concentration for two-hour increments is not a limitation at all.  (Pl.'s Memo. at 10.)  But "[a] district court reviewing a decision from an ALJ is not tasked with determining whether a different limitation is more appropriate, rather the court is tasked with determining whether the limitation actually found by the ALJ is supported by substantial evidence."  *Alicea v. Saul*, No. 3:19-cv-

01074 (VLB), 2020 WL 13993369, at *9 (D. Conn. Sept. 17, 2020).  The ALJ found that the

plaintiff "could sustain concentration, persistence, and pace for two-hour segments." (R. 19.)  The

question therefore is whether that finding is supported by substantial evidence.  *Alicea*, 2020 WL

13993369, at *9.

    In determining the plaintiff's RFC, the ALJ cited treatment notes from several sessions

that the plaintiff had at Stokes Counseling Services.  (R. 21–24.)  Those treatment notes

consistently state that the plaintiff "had good attention/concentration."  (R. 25; *see also* R. 597,

602, 606, 608, 610, 612, 615, 617, 621, 623, 626, 628, 630, 632, 635, 637, 639, 643, 645.)  To be

sure, there was contrary evidence in the record, as the ALJ noted.  (*See, e.g.*, R. 25.) (reviewing

treating source's statement that the plaintiff "could not concentrate more than [thirty] minutes

without needing redirection or requiring a break," but finding it "not persuasive").  But provided

that he follows the SSA regulations governing the evaluation of medical source statements—and

the plaintiff does not claim otherwise (*see generally* Pl.'s Memo.)—an ALJ's weighing of the

evidence is ordinarily entitled to deference from this Court.  *See, e.g.*, *Katherine B. v. Comm'r of

Soc. Sec.*, No. 1:23-cv-00124 (WMS), 2024 WL 1756306, at *6 (W.D.N.Y. Apr. 24, 2024) (citing

*Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).  In this case, the ALJ had substantial evidence

for his RFC determination on CPP in the form of the Stokes Counseling notes, and accordingly

that determination must be upheld.  *See Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y.

2008); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

## V.    CONCLUSION AND ORDER

    For the reasons stated, the Court concludes that the ALJ's decision was supported by

substantial evidence and free of legal error.  Therefore, the plaintiff's Motion to Reverse the

Decision of the Commissioner is DENIED, and the Commissioner's Motion to Affirm the Decision of the Commissioner is GRANTED.

This is not a recommended ruling. The consent of the parties allows the undersigned Magistrate Judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF Nos. 3, 8, 12.) Appeals from this judgment may be made directly to the United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Commissioner, and to close this case.

So ordered at Hartford, Connecticut this 11th day of March, 2025.


*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge